IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY KUNSAK,<br>          Plaintiff,<br><br>v.<br><br>JOHN E. WETZEL, *individually as Secretary for the Pennsylvania Department of Corrections*; MARK V. CAPOZZA, *individually as Superintendent of SCI Pittsburgh*; THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS; THE STATE CORRECTIONAL INSTITUTION-PITTSBURGH; and WILLIAM J. WOODS, *individually as Deputy Superintendent for Centralized Services*,<br>          Defendants. | Civil Action No. 15-1648<br>Chief Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 25 |

## OPINION

**KELLY, Chief Magistrate Judge**

Plaintiff, a former employee of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution-Pittsburgh ("SCI-Pittsburgh"), has brought this action against the DOC; SCI-Pittsburgh; the Secretary of the DOC, John E. Wetzel; the Superintendent of SCI-Pittsburgh, Mark V. Capozza; and the Deputy Superintendent for Centralized Services at SCI-Pittsburgh, William J. Woods, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*; the Family and Medical Leave Act, 29 U.S.C. §§ 1210 *et seq.* and the Pennsylvania Human Relations Act, 42 P.S. §§ 951 *et seq.* ECF No. 22.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim. ECF No. 25. For the reasons that follow, the Motion will be granted in part and denied in part.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was employed as a Psychological Services Specialist ("PSS") at SCI-Pittsburgh from November 3, 2008, until her termination in October 2013. She is 58 years old and suffers from an array of physical impairments, which limit her ability to climb, walk, run, bend, stoop, lift, stand/sit for long periods of time and concentrate.

SCI-Pittsburgh serves as the DOC's intake center for western Pennsylvania, processing all inmates entering Pennsylvania's corrections system, including parole violators, in the western part of the state. Plaintiff was responsible for providing psychological services in the prison's general population unit, which houses more inmates than "the special housing units where the other PSSs worked." ECF No. 22 ¶ 20. In addition, Plaintiff "provid[ed] psychological services to new inmates arriving at SCI-Pittsburgh" and "conduct[ed] parole reports prior to the new inmates being released to county prison[s]." Id. ¶ 22.

The circumstances giving rise to this action began in late 2012. PSSs are typically supervised by a Licensed Psychology Manager ("LPM"). In September 2012, however, the LPM at SCI-Pittsburgh retired and was not replaced. In the absence of a full-time LPM, a LPM from another DOC facility stepped in one day per week to assist with supervisory duties. Meanwhile, Deputy Superintendent William J. Woods ("Woods"), who oversaw medical care and psychological services at the prison, became Plaintiff's immediate supervisor. In May 2013, one of Plaintiff's fellow PSSs retired, reducing the number of PSSs at SCI-Pittsburgh from five to four.

The reduction in staff resulted in an increase in Plaintiff's workload, such that it became difficult for her to manage with her impairments. At some point, "Plaintiff shared with" Woods "that additional staff was necessary to handle her workload." Id. ¶ 23. Woods acknowledged that

2

there were issues with understaffing after the former LPM's retirement and encouraged his staff to work overtime.

On July 10, 2013, a prisoner was found dead of an apparent suicide in the general population unit. An investigation led by Woods determined that Plaintiff violated prison procedure by not evaluating the prisoner after he had been referred for evaluation. During the inquiry, Plaintiff claimed that she did not evaluate the prisoner due to her "unmanageable workload due to understaffing." ECF No. 22 ¶ 29. According to Plaintiff, "[d]espite the systemic failures involving the male dominated Psychology Department at SCI-Pittsburgh, including gross staffing shortages and the inability to timely provide psychiatric care to mentally ill inmates, [she] remained the sole subject of the fact finding related to the inmate suicide." Id. ¶ 36. Plaintiff alleges that all of the individuals and decision makers involved in the investigation were male, including Unit Manager Joseph Schott, who conducted the fact-finding inquiry.

On October 18, 2013, Plaintiff was terminated by Superintendent Mark V. Capozza ("Capozza"). Plaintiff alleges that no other members of the Psychology Department at SCI-Pittsburgh were disciplined or terminated in connection with the inmate's suicide, nor were any other employees, including corrections officers. In addition, Plaintiff alleges that before the incident she had never been disciplined in any manner and had always received positive performance reviews. In fact, she had a performance review following the incident, during which Woods did not discipline her but instead said "that he would review her workload and response to referral requests in 90 days." Id. ¶ 39. Plaintiff was terminated before that 90-day period ended.

On April 15, 2014, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("the PHRC"), which named the DOC and SCI-Pittsburgh as respondents.[1] ECF No. 25-1 at 3-9. On the PHRC questionnaire, Plaintiff checked boxes indicating that she experienced the following discriminatory events or actions: discharge (next to which she wrote "unmanageable workload, not accommodated"), discipline, harassment and failure to accommodate because of her disability. She also checked boxes indicating that she felt she was discriminated against because of her age, disability and sex, as well as the box for retaliation. When asked to identify a person who was treated better than she, Plaintiff identified a younger, non-disabled PSS at a different DOC facility who was only suspended one week for a similar violation. Plaintiff also wrote that "two corrections officers who were to make rounds failed to do so, and the inmate in question was not found before he completed suicide. They were suspended 2 wks." Id. at 5.

In the section of the PHRC questionnaire regarding harassment, Plaintiff alleged that she was "harassed" by a certified registered nurse practitioner ("CRNP") named Jennifer Dylewski, who was employed by "MHM,"[2] from May 2013 until September 2013. Plaintiff explained that she had received e-mails from Dylewski requesting therapy sessions to be scheduled with inmates more frequently, questioning the content of Plaintiff's counseling, and suggesting that certain inmates were manipulating Plaintiff. Plaintiff wrote that she felt this conduct was "severe and/or pervasive" because the e-mails were copied to the fill-in LPM, even though they should have been addressed with Plaintiff face-to-face. She indicated that the harassment stopped after

---

[1] The Court may consider Plaintiff's PHRC complaints, which Defendants have attached as Exhibits A and B to their Motion to Dismiss, without converting the Motion into one for summary judgment. See Gamble v. Cty. of Erie, Civ. A. No. 12-150, 2013 WL 5231470, at *3 n.3 (W.D. Pa. Sept.16, 2013) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 780 (W.D. Pa. 2000).
[2] This appears to be a reference to MHM Correctional Services, Inc., which contracts to provide mental health services to inmates in the DOC.

4

she complained to her union steward, who in turn contacted Woods. Finally, she noted that two male PSSs were treated better than she in that they "did not appear to be questioned [or] criticized for not providing services more frequently, or questioned about [their] ability to resist inmate manipulation." Id. at 9.

On July 23, 2014, Plaintiff filed an amended complaint with the PHRC against the DOC and SCI-Pittsburgh. ECF No. 25-1 at 11-15. In the amended PHRC complaint, Plaintiff only alleged a claim for disability discrimination, identifying the same non-disabled, female comparator identified in the original complaint. Id.

Plaintiff initiated this action on December 14, 2015, alleging claims for gender discrimination under Title VII and the PHRA and FMLA retaliation against Secretary Wetzel ("Wetzel") and Capozza. On February 12, 2012, Defendants filed a Motion to Dismiss. ECF No. 9. Plaintiff responded by filing a First Amended Complaint ("the Amended Complaint"), in which she alleges the following claims: hostile work environment, disparate treatment, and harassment under Title VII against the DOC and SCI-Pittsburgh (Counts I – III)[3]; harassment and hostile work environment, disparate treatment, and disability discrimination under the PHRA against Wetzel, Capozza, and Woods (Counts IV-VI); disability discrimination under the ADA against the DOC and SCI-Pittsburgh (Count VII); failure to make reasonable accommodations under the Rehabilitation Act (Count VIII); and FMLA retaliation (Count IX). ECF No. 22.

On April 13, 2016, Defendants filed another Motion to Dismiss, with a brief in support. ECF Nos. 25-26. On May 5, 2016, Plaintiff filed a brief in opposition to the Motion. ECF No. 28. Accordingly, the Motion to Dismiss is ripe for disposition.

---

3 Although Plaintiff has alleged separate claims for "hostile work environment" and "harassment," these claims are one and the same and will be treated as such herein. See Rachuna v. Best Fitness Corp., Civ. A. No. 13-365, 2014 WL 1784446, at *5 (W.D. Pa. May 5, 2014) (dismissing claim for sexual harassment as duplicative of hostile work environment claim).

5

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Dismissal of a complaint or portion of a complaint is warranted under Fed. R. Civ. P. 12(b)(6) when a plaintiff fails to sufficiently state a claim upon which relief can be granted. To avoid dismissal under Rule 12(b)(6), the complaint must provide "enough factual matter (taken as true)" to suggest the required elements of the claim presented. Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). The pleader must "'nudge his or her claims across the line from conceivable to plausible.'" Id. (quoting Bell Atlantic Co. v. Twombly, 550 U.S. 544 at 570 (2007)).

In ruling on a motion to dismiss, the court must accept all alleged facts as true and draw all inferences gleaned therefrom in the plaintiff's favor. Id. at 228 (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)). A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Assoc., Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)).

## III. DISCUSSION

### A. Title VII Claims

Defendants first argue that Plaintiff should not be permitted to pursue claims for gender-based hostile work environment, disparate treatment and harassment (Counts I, II and III) because she failed to exhaust administrative remedies with regard to these claims. The Court agrees in part.

Under Title VII, "[a] plaintiff 'must exhaust all required administrative remedies before bringing a claim for judicial relief.'" Mandel v. M & Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013) (quoting Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997)). "[T]he purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute." Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999). The scope of any future civil action is, in turn, "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Mandel, 706 F.3d at 163 (citing Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). "Thus, '[a] Title VII plaintiff may include in a civil complaint claims of discrimination similar or reasonably related to those alleged in the EEOC charge.'" Braddock v. SEPTA, Civ. A. No. 13-06171, 2014 WL 6698306, at *7 (E.D. Pa. Nov. 25, 2014) (quoting Fucci v. Graduate Hosp., 969 F. Supp. 310, 115 (E.D. Pa. 1997)). The United States Court of Appeals for the Third Circuit has instructed, however, that "the scope of the original charge should be liberally construed" since "charges are most often drafted by one who is not well versed in the art of legal description." Hicks v. ABT Assoc., Inc., 572 F.2d 960, 965 (3d Cir. 1978).

### 1. Hostile Work Environment (Count I)

Plaintiff's gender-based hostile work environment claim has not been exhausted, insofar as it is not reasonably related to the "harassment" claim that she alleged in her initial PHRC complaint. "[T]he [administrative] charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1118 (7th Cir. 2001). Here, Plaintiff's initial PHRC complaint dealt with different actors and different conduct than that which is alleged in this lawsuit. Specifically, at the PHRC,

Plaintiff alleged that she was harassed by CRNP Dylewski in e-mails occurring on a weekly basis between late May 2013 and late September 2013 and that the alleged harassment ceased after her fellow PSS and union steward, Dan McGiven, intervened with Woods. In contrast, in the Amended Complaint, there are no allegations regarding "harassment" by CRNP Dylewski. Rather, the focus of Plaintiff's hostile work environment claim is the alleged increase in her workload resulting from the DOC's "failure to replace and adequately staff the Psychology Department following the retirement of the previous female LPM[.]" ECF No. 22 ¶ 64. "In short, the administrative charges and the [Amended Complaint] describe two different cases, and that is precisely the sort of disjunction that the administrative complaint process is designed to avoid." Chacko v. Patuxent Inst., 429 F.3d 505, 512 (4th Cir. 2005).

The Court acknowledges that, in her initial PHRC complaint, Plaintiff did note that she had an "unmanageable workload," but she did so in the context of explaining her request for accommodation of her disability. See, e.g., ECF No. 25-1 at 7 ("In 2013, I discussed additional workload and need for assistance with LPM, MHM, and Deputy Woods. . . . I was able to take time off for appointments but had no solutions offered for additional workload."). She did not suggest, as she now does, that the additional workload was, in and of itself, a form of actionable harassment designed to make her job more difficult because she is a woman. Even when Plaintiff's PHRC charge is liberally construed, the Court cannot conclude that the allegations contained therein raised the same claim for gender-based hostile work environment that she currently alleges in this lawsuit. Nor can the Court conclude that the administrative investigation of the discrete allegation of "harassment" by a coworker in Plaintiff's initial PHRC complaint would have uncovered the allegations that are now at the heart of her gender-based hostile work

environment claim. Thus, Count I will be dismissed.[4]

## 2. Disparate Treatment (Count II)

The Court finds, however, that when liberally construed, Plaintiff's initial PHRC complaint could be read as asserting the same claim for gender-based disparate treatment that she now asserts in her Amended Complaint. In her initial PHRC complaint, Plaintiff checked the box corresponding with gender discrimination. Moreover, although the only comparator she specifically identified in either PHRC complaint was a younger, non-disabled woman, she also wrote that "two corrections officers who were to make rounds failed to do so, and the inmate in question was not found before he completed suicide. They were suspended 2 wks." Id. at 5. Although the gender of the corrections officers is not mentioned, this allegation is sufficiently close to her current claim that she "was treated worse that similarly situated male employees" in that she was terminated for a rule violation, whereas male employees who engaged in similar conduct, including corrections officers, were not. ECF No. 22 ¶¶ 42, 74-76. Even if not technically within the scope of her PHRC complaint, this claim could reasonably be expected to be encompassed by the administrative investigation into her claim. Accordingly, Defendants' Motion to Dismiss as to Count II is denied.[5]

---

4 Even if Plaintiff had exhausted this claim, the Court would agree with Defendants that Plaintiff has not pled sufficient facts to create an inference that discovery would show that she experienced "severe or pervasive" discriminatory conduct. As Defendants argue, Plaintiff has not identified a single incident in which she was subjected to harassing conduct by a co-worker or supervisor, much less conduct that was "severe or pervasive." Her allegations are a "mishmash of complaints about overwork rather than about a place permeated with intimidation, ridicule, and insult." Boss v. Castro, 816 F.3d 910, 920 (7th Cir. 2016). However, "[s]uch frustrations do not support a hostile work environment claim." Id. Plaintiff's claim also fails inasmuch as there are no allegations linking Defendants' alleged "failure to adequately staff the Psychology Department following the retirement of the previous LPM" and the resulting increase in Plaintiff's workload and assignment to the general housing unit to her gender.

5. Defendants have only moved to dismiss Plaintiff's disparate treatment claim in Count II on the grounds that she failed to exhaust her administrative remedies. They have not argued that Plaintiff has failed to state a disparate treatment claim based on gender.

### 3. Harassment (Count III)

In footnote 2 of Defendants' Brief in Support of the instant Motion to Dismiss, Defendants move to dismiss Plaintiff's Title VII sexual harassment claim on the same grounds as they seek dismissal of Plaintiff's hostile work environment claim at Count I. ECF No. 26 at 8. For the reasons set forth above as to Count I, the Motion to Dismiss is granted as to Plaintiff's gender-based harassment claim set forth in Count III.

### B. PHRA Claims

Defendants Wetzel, Capozza, and Woods argue that the PHRA claims set forth in Counts IV, V and VI of the Amended Complaint should be dismissed because Plaintiff only named the DOC and SCI-Pittsburgh as respondents in her PHRC complaints. As a result, Wetzel, Capozza and Woods move to dismiss Plaintiff's PHRA claims on the basis of failure to exhaust administrative remedies as to these three individual defendants.

As with Title VII, "[b]efore filing suit under the PHRA, a plaintiff must first exhaust all administrative remedies by filing a charge of discrimination (also referred to as an administrative complaint) with the [PHRC] or EEOC." Hills v. Borough of Colwyn, 978 F. Supp. 2d 469, 478 (E.D. Pa. 2013) (citing Kunwar v. Simco, 135 F. Supp. 2d 649, 653 (E.D. Pa. 2001)); 43 P.S. § 962). The administrative complaint "must name the individual(s) alleged to have violated the PHRA." DuPont v. Slippery Rock Univ. of Penn., Civ. A. No. 11-1435, 2012 WL 94548, at *3 (W.D. Pa. Jan. 11, 2012) (citing 43 P.S. § 959(a)). Noncompliance with this requirement will generally bar a later action against an individual who was not named in the administrative complaint. See, e.g., Hajzus v. Peters Twp. Sch. Dist., Civ. A. No. 06-1401, 2007 WL 917082, at *3 (W.D. Pa. Mar. 23, 2007). However, the United States Court of Appeals for the Third Circuit "recognizes an exception when the unnamed party received notice and when there is a shared

commonality of interest with the named party." Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh, 903 F.2d 243, 252 (3d Cir. 1990) (citing Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980)). Applying this exception, "[c]ourts have found that the individuals do not have to be named in the caption of the case and that just mentioning the individuals in the body of the Complaint gives the individuals the requisite notice so that judicial relief may be sought under the PHRA." DuPont, 2012 WL 94548, at *3 (citing McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 398-99 (E.D. Pa. 2002)). Still, "the Complaint must make it clear that the Defendant could be sued in his individual capacity rather than his official capacity for the notice requirement to be met in this manner." Id. (citing McInerney, 244 F. Supp. 2d at 399).

Regarding the "commonality of interest" requirement, the Court of Appeals has identified four factors that a court should consider: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. Glus, 629 F.2d at 251.

### 1. Defendant Wetzel

In the instant case, Wetzel's name not only fails to appear in the caption of Plaintiff's PHRC complaints, but it is also nowhere to be found in the body of the complaints. The Court finds, therefore, that the Shafer exception cannot be applied to him. Additionally, even assuming that Wetzel somehow did receive notice through his role as DOC Secretary, there is nothing in

11

either PHRC complaint that would have led him to believe that Plaintiff might seek to hold him liable in his individual capacity. See DuPont, 2012 WL 94548, at *3 ("Although Defendants Smith and Williams were aware of the Complaint (or should have been aware of the Complaint) because of their positions as President and Provost of Slippery Rock respectively, they did not have notice that they could be sued in their individual capacities.") Thus, the PHRA claims against Wetzel must be dismissed.[6]

### 2. Defendant Capozza

Defendant Capozza, the Superintendent at SCI-Pittsburgh, is not named as a respondent in either of Plaintiff's PHRC complaints. However, Capozza was identified once in the body of initial complaint as being the person who "authored" Plaintiff's discharge letter. ECF No. 25-1 at 8. Plaintiff also alleged in the initial PHRC complaint that Capozza knew that she had complained about harassment. Id. Capozza is not referenced in the text of the amended PHRC complaint.

The question for the Court, at this initial stage, is whether these two references can be said to have put Capozza on notice that Plaintiff believed he engaged in discriminatory conduct and sought to hold him personally liable. See, e.g., Meyers v. Cal. Univ. of Penn., Civ. A. No. 12-1258, 2013 WL 795059, at *12 (W.D. Pa. Mar. 4, 2013) (holding that although there were "fleeting references" to the defendants in the EEOC charge, they were not sufficient to put them on notice that plaintiff would sue them in their individual capacities); Urey v. E. Hempfield Twp., Civ. A. No. 08-5346, 2009 WL 561664, at *4 (E.D. Pa. Mar. 4, 2009) (dismissing claim

---

6 Even assuming that Wetzel had been named in Plaintiff's PHRC complaints, the claims against him would nonetheless fail because Plaintiff has not alleged that he was personally involved in any way in the alleged hostile work environment, the alleged failure to accommodate her disability, or the decision to terminate her employment. Indeed, with the exception of the paragraph identifying Wetzel's position in the DOC, there is only one conclusory paragraph in the entire Amended Complaint that mentions Wetzel, and that paragraph appears in the section of the Amended Complaint addressing the FMLA claim. ECF No. 22 ¶ 132.

12

against township police chief because the plaintiff "failed to make any specific allegations against him in the Charge, other than that he communicated her termination from employment to her"). Although it is a close call, at this early stage of the proceedings, these allegations were sufficient to put Capozza on notice. Consequently, the Motion to Dismiss the PHRA claims against Capozza is denied.

### 3. Defendant Woods

As to Plaintiff's PHRA claims against Defendant Woods, the Deputy Superintendent of Centralized Services at SCI-Pittsburgh, he is named by Plaintiff throughout the initial PHRC complaint. In that complaint, Plaintiff identified Woods as one of the people who were treating her as disabled, stated that she discussed her "additional workload and need for assistance" with him and stated that he denied the request. ECF No. 25-1 at 7. She further stated that Woods was made aware of the harassment and explained that the harassment by CRNP Dylewski ceased when her union steward contacted Woods on Plaintiff's behalf. Id. at 8. In the amended PHRC complaint, Plaintiff alleged that Woods stated the reason offered by the DOC for her termination. Id. at 12. Again, at this early stage, these allegations suffice to put Woods on notice that Plaintiff sought to hold him liable in his individual capacity. Accordingly, the Motion to Dismiss as to the PHRA claims against Defendant Woods is denied.

In summary, the PHRA claims against Defendant Wetzel are dismissed. The PHRA claims against Defendants Capozza and Woods will remain.

### C. ADA Claim

In Count VII, Plaintiff alleges a claim of disability discrimination. In the Motion to Dismiss, the DOC and SCI-Pittsburgh contend that the Eleventh Amendment bars Plaintiff's ADA claim. It is undisputed that "[s]uits seeking money damages against the state for an alleged

13

failure to comply with Title I of the ADA are barred by the Eleventh Amendment." Banks v. Ct. of Common Pleas FJD, 342 F. App'x 818, 820-21 (3d Cir. 2009). Plaintiff argues, however, that her claim is not barred because it is brought under Title II of the ADA, not Title I, and the Supreme Court has held that Title II validly abrogates Eleventh Amendment immunity. See Tennessee v. Lane, 541 U.S. 509, 513 (2004). The Court cannot agree.

Title I of the ADA specifically prohibits discrimination with respect to employment. 42 U.S.C. § 12112(a). Title II, by contrast, provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Id. § 12132.

Although the United States Court of Appeals for the Third Circuit has not decided whether a plaintiff can raise an employment claim under Title II, the overwhelming weight of authority from district courts in the Third Circuit holds that Title II "does not apply to employment claims." See Cook v. City of Philadelphia, 94 F. Supp. 3d 640, 648 (E.D. Pa. 2015) (collecting cases). "Additionally, the Courts of Appeals for the Second, Seventh, Ninth and Tenth Circuits have all held that Title II of the ADA does not cover disability-based employment discrimination claims." Id. (citing Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 166-172 (2d Cir. 2013); Brumfield v. City of Chicago, 735 F.3d 619, 624-630 (7th Cir. 2013); Zimmerman v. Oregon Dep't of Justice, 170 F.3d 1169 (9th Cir. 1999); Elwell v. Oklahoma, ex rel., Bd. of Regents of Univ. of Okla., 693 F.3d 1303, 1306-1310, 1314 (10th Cir. 2012)). The Court agrees "that Congress did not intend Title II of the ADA to apply to employment discrimination claims when it has expressly authorized a mechanism to bring employment claims under Title I." Id. Thus, Plaintiff's ADA claim can only be based on Title I,

14

and as such must be dismissed.

### D. Rehabilitation Act Claim

At Count VIII, Plaintiff asserts a claim of failure to accommodate under the Rehabilitation Act. Defendants move to dismiss Plaintiff's Rehabilitation Act claim as untimely since it was filed more than two years after the termination of Plaintiff's employment in October 2013. Since the Rehabilitation "Act does not include an express limitations clause," the Court must "borrow[] the statute of limitations of the most analogous state law cause of action." Fowler, 578 F.3d at 207. Defendants are correct that, generally, "a two-year statute of limitations applie[s] to claims brought under § 504 of the Rehabilitation Act because [such] claims [are] analogous to a personal injury action under Pennsylvania law." Id. (citing Disabled in Action of Penn. v. SEPTA, 539 F.3d 199, 208 (3d Cir. 2008)). However, as Plaintiff contends, in Fowler, the Court of Appeals held that 28 U.S.C. § 1668(a), which creates a four-year statute of limitations for all actions arising under acts of Congress enacted after December 1, 1990, "applie[s] to a claim of employment discrimination under the Rehabilitation Act based on allegations that the plaintiff's employer failed to transfer her to a different position" as an accommodation for her disability. George v. Cty. of Allegheny, Civ. A. No. 11-17, 2013 WL 4455607, at *3 (W.D. Pa. Aug. 16, 2013) (citing Fowler, 578 F.3d at 206). That is because failure-to-transfer claims were not recognized under the Rehabilitation Act until the enactment of 29 U.S.C. § 794(d) in 1992, which made the standards for determining liability under the Rehabilitation Act coextensive with the ADA's standards. See Fowler, 578 F.3d at 208.

Therefore, the Court must determine whether Plaintiff is truly alleging a failure-to-transfer claim. To state a claim under this theory, a plaintiff must prove: "(1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former

15

job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation." Donahue v. Consol. Rail Corp., 224 F.3d 226, 230 (3d Cir. 2000).

Plaintiff alleges that Defendants could have accommodated her by:

a) maintaining proper staffing levels and supervision to allow for a reasonable workload;
b) reassigning Plaintiff's job assignments to limit walking throughout general population;
c) utilizing video conferencing capabilities to reduce the amount of walking throughout the prison;
d) employing proper supervision to assist with division of duties and balance of workload; [and]
e) using a centralized location for evaluations[.]

ECF No. 22 ¶ 123. All of these proposed accommodations relate to Plaintiff's then-current position as a PSS. See Stine v. Penn. St. Police, Civ. A. No. 09-944, 2012 WL 959362 at *5 (M.D. Pa. 2012) (holding that the two-year statute of limitations applied to the plaintiff's Rehabilitation Act claim, since the plaintiff did not request to be transferred: "[t]he focus of his request was help in performing his current and future jobs, not a transfer in and of itself"). While she may have requested to be reassigned from the general population unit, she was nonetheless not requesting a transfer "to a position different from the position [she] previously held." George, 2013 WL 4455607, at *5. The Court recognizes that elsewhere in the Amended Complaint, Plaintiff avers that "Defendants failed to hire anyone [to replace the LPM who retired in May 2012] and to promote Plaintiff to LPM." ECF No. 22 ¶ 68. Nonetheless, this allegation is not sufficient to transform Plaintiff's claim into one for failure to transfer because "the only positions that need to be considered for a reassignment are those that are not promotions." Smith v. Midland Brake, Inc., 180 F.3d 1154, 1176-77 (10th Cir. 1999).

Because Plaintiff's Rehabilitation Act claim cannot properly be characterized as a failure-to-transfer claim, Plaintiff had two years from the date of her termination on October 18, 2013,

16

to raise this claim. See Fowler, 578 F.3d at 209 (explaining that the plaintiff's termination date is "the starting date for statute of limitations purposes"). She did not do so until she filed the Amended Complaint on March 16, 2016, well beyond the two-year window. ECF No. 22. In fact, even if the claim relates back to the date when her first Complaint was filed, December 14, 2015, it would still be untimely. Therefore, Defendants' Motion to Dismiss as to the Rehabilitation Act claim is granted.[7]

### E. FMLA Retaliation Claim

In Count IX, Plaintiff asserts a claim of retaliation under the FMLA. In the Motion to Dismiss, Defendants argue that Plaintiff has not stated a claim for retaliation under the FMLA. "To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012) (citing Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508-09 (3d Cir. 2009)). While Defendants concede that the first two elements are met, they argue that Plaintiff has not pled sufficient facts regarding causation.

To show causation, a plaintiff "must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination." Id. at 307. When the amount of time between a plaintiff's invocation of her right to FMLA leave and her termination is "unduly suggestive," that alone is sufficient "to create an inference of causality[.]" Id. When the "temporal proximity" between the two events is not "unduly suggestive," the Court must

---

[7] Plaintiff's Rehabilitation Act claim would also likely fail on its merits because, as Defendants point out, Plaintiff has not alleged that she ever actually requested an accommodation. See Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010) (explaining that an employer is only liable for failing to make reasonable accommodations if, *inter alia*, "the employee requested accommodations or assistance for his or her disability"). Although the Amended Complaint does indicate that Plaintiff requested FMLA leave, an "employee who requests leave does not clearly communicate to her employer that she is disabled and desires an accommodation." Rutt v. City of Reading, Civ. A. No. 13-4559, 2014 WL 5390428, at *5 n.12 (E.D. Pa. Oct. 22, 2014) (citing Colwell, 602 F.3d at 506). Thus, the request of leave would not be enough to save her Rehabilitation Act claim.

"ask whether the proffered evidence, looked at as a whole, may suffice to raise the inference." Id. (internal citation and quotation marks omitted). In doing so, the Court "may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee, or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation . . . ." Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (internal citations omitted).

In the Amended Complaint, Plaintiff alleges that she requested FMLA leave in 2005, 2006, 2009, 2010, and 2012, and "took time off for monthly doctor appointments and physical therapy as needed." ECF No. 22 ¶¶ 10-11. She has not specified, however, the exact date on which she last took FMLA leave. Thus, the Court cannot determine whether the "temporal proximity" between Plaintiff's leave and her termination in October 2013 is, by itself, suggestive of retaliation. See Conklin v. Warrington Twp., Civ. A. No. 06-2245, 2009 WL 1227950, at *3 (M.D. Pa. Apr. 30, 2009) ("[T]emporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.").

Nor has Plaintiff alleged any facts that could support a reasonable inference that discovery will reveal circumstantial evidence of causation. Plaintiff points to the fact that she was "given a large workload that required her to ambulate through the general population of the prison" and claims this is sufficient to show a pattern of antagonism toward her. ECF No. 28 at 21. However, there are no allegations linking the decision regarding Plaintiff's workload to her request for FMLA leave. See Cortazzo v. City of Reading, Civ. A. No. 14-2513, 2016 WL 1022267, at *5 (E.D. Pa. Mar. 15, 2016) ("[T]o establish a causal link, the intervening antagonism must have been a result of the protected activity."). Plaintiff has not alleged, for

18

example, that the she was assigned to the general housing unit or otherwise saw a change in her workload soon after she requested or took FMLA leave, which might suggest that there was some connection between the two.

Indeed, Plaintiff's other allegations actually tend to undermine her claim that the two events were causally connected. In particular, Plaintiff had requested and been granted FMLA on numerous occasions between 2005 and 2010. Yet she was not terminated after any of those requests. See Calero v. Cardone Indus., Inc., Civ. A. No. 11-3192, 2012 WL 2547356, at *8 (E.D. Pa. June 29, 2012) (explaining that employer's history of granting the plaintiff's FMLA requests bolstered the employer's claim that the plaintiff's "termination had nothing to do with his FMLA leave"). Plaintiff was even apparently permitted to take time off for appointments and therapy during the same time period when her workload was becoming unmanageable, without suffering any adverse consequences. ECF No. 25-1 at 7 ("I was able to take time off for appointments, but had no solutions offered for additional workload."). In view of that fact, it is simply implausible that Defendants terminated Plaintiff because of her use of FMLA leave. Thus, Defendants' Motion to Dismiss is granted as to the FMLA retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.

Accordingly, the following Order is entered:

### ORDER

AND NOW, this 7th day of November, 2016, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss, ECF No. 25, is GRANTED as to Count I, Count III, Count IV as to Defendant Wetzel, Count V as to Defendant Wetzel; Count VI as to Defendant Wetzel, Count

VII, Count VIII and Count IX and DENIED as to Count II, Count IV as to Defendants Capozza and Woods, Count V as to Defendants Capozza and Woods and Count VI as to Defendants Capozza and Woods.

Thus, the surviving claims, to which Defendants must file an Answer within 14 days of the date of this Order, are Count II, against the DOC and SCI-Pittsburgh, Count IV against Defendants Capozza and Wood, Count V against Defendants Capozza and Wood and Count VI against Capozza and Wood.

IT IS FURTHER ORDERED that Defendant Wetzel be dismissed from the case.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days of the docketing of the entry of the Judgment Order, filed this day, by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

*/s/ Maureen P. Kelly*

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF