IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY KUNSAK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-1648 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| JOHN E. WETZEL, *individually as Secretary for the Pennsylvania Department of Corrections,* MARK V. CAPPOZA, *individually as Superintendent of SCI Pittsburgh*, THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, THE STATE CORRECTIONAL INSTITUTE - PITTSBURGH, WILLIAM J. WOODS, *individually as Deputy Superintendent for Centralized Services* | ) ) ) ) ) ) ) ) ) ) ) | Re: ECF No. 61 |
| Defendants. | ) | |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff Nancy Kunsak ("Plaintiff" or "Kunsak"), is a former employee of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution – Pittsburgh ("SCI-Pittsburgh"), who alleges that her civil rights were violated when she was wrongfully terminated from her position as a Psychological Services Specialist ("PSS") in October 2013. The parties have concluded discovery proceedings, and have stipulated to the dismissal of all parties and claims asserted in Plaintiff's Amended Complaint, with the exception of Count VI as to Defendant William J. Woods ("Woods"), a claim for aiding and abetting disability discrimination pursuant to the Pennsylvania Human Relations Act, 43 P.S. §§ 951, *et seq*. ECF No. 58.

Presently before the Court is a Motion for Summary Judgment filed on behalf of Defendant William J. Woods, ECF No. 61. For the reasons that follow, the Motion for Summary Judgment will be granted.[1]

I.     FACTUAL AND PROCEDURAL BACKGROUND

Kunsak has been employed or self-employed as a licensed psychologist since 1990, and began working for the DOC as a PSS at SCI – Pittsburgh on November 3, 2008. Kunsak was terminated on October 18, 2013, after the suicide of an inmate she had failed to screen despite two referrals for assistance. ECF Nos. 63 at 2; 64-1 at 30. Plaintiff contends that she was wrongfully terminated as the result of unlawful discrimination, arising out of the DOC and Defendant Woods' failure to accommodate her mobility disability which, in turn, rendered her workload overwhelming. ECF No. 69-4 at 3.

At the time of her termination, Kunsak was supervised by Defendant Woods, Deputy Superintendent for Centralized Services at SCI – Pittsburgh. Woods' employment at SCI – Pittsburgh began in 2012, at a time when he also supervised Sandy Vujnovic, the facility's Licensed Psychology Manager ("LPM"). Upon Vujnovic's retirement in 2012, Woods took over supervision of the administrative aspects of the Psychology Department as well as the Department's staff, including Kunsak. Because Woods was not a licensed psychologist, clinical supervision was provided by licensed psychologists from two nearby facilities. ECF No. 63 at 3 – 4, ECF No. 68 at 4 – 5.

Between 2000 and 2002, Kunsak was diagnosed with arthritis, and suffered a broken leg in 2008. ECF No. 68 ¶ 18. She was also diagnosed with fibromyalgia. Id. As a consequence of mobility issues related to her diagnoses, in 2008 Kunsak began to wear knee braces and to walk

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 4, 20.

2

with a cane. Kunsak did not use the cane inside SCI – Pittsburgh, and discontinued using the leg braces in 2014. Other than the cane used to ambulate to and from work, knee braces, and the use of leg wraps, Kunsak did not use any other assistive devices while employed at SCI – Pittsburgh. ECF No. 68 at ¶¶ 22- 24, but did walk slowly and with some difficulty. ECF No. 69-4.

Kunsak contends that she was terminated as a result of the DOC's failure to accommodate her disability. ECF No. 68 at 7. In particular, prior to the incident leading to her termination, Kunsak was denied a request for a key to access an empty office on her assigned cell block, so that inmates scheduled to see her could be escorted to her by facility guards. Id. at 8-9. Kunsak states that access to an office would have avoided trips to and from various levels of the cell block to see each inmate, which were otherwise hampered by her slow gait. Id., 8-12. In addition, Kunsak sought to consolidate all assigned prisoner visits to a single building, but this request was also denied due to safety and staff efficiency issues. Id. at 13.

In the year leading up to Kunsak's termination, SCI – Pittsburgh's loss of a full-time LPM and a peer PSS led to increased workloads for remaining staff. Kunsak states that during this time, she complained about being unable to complete her workload because of her disabilities. Id. at 28. The parties dispute whether her complaints were ever directed to Defendant Woods or that he was aware of her complaints, or even whether she considered herself as disabled. ECF No. 75 at 4. However, it is evident that prior to her termination, Kunsak did not file any complaints or grievances regarding her need or desire for accommodations to the DOC Human Resources department, her union, or the Pennsylvania civil service agency. ECF No. 68 at 16.

On July 10, 2013, Inmate GJ6456 committed suicide in his cell on SCI – Pittsburgh's F- Block. The ensuing investigation revealed that the Psychology Department received three Mental Health Referrals on the inmate's behalf, dated June 12, 2013, June 24, 2013, and July 1,

3

2013. The referrals were submitted by SCI – Pittsburgh medical staff, who reported that the inmate was depressed and frustrated, with a "flat affect." ECF No. 64-1 at 4, 10-12. Kunsak was assigned the referrals, and acknowledges receiving two. ECF No. 69-4 at 5. Despite the referrals, Kunsak failed to take action and did not assess the inmate. DOC policy relative to Mental Health Care Procedures requires that "[u]nder supervision of the LPM, Psychology staff will interview the inmate as soon as possible after receipt of the referral, but no later than one week. This interview will be documented on a DC-560." ECF No. 64-1 at 9. Upon inquiry into the lapse, Kunsak provided a statement to the investigator indicating that "[w]ith the amount of referrals that I had to process and the coverage I was providing for our department for the Month of June, I prioritized the referrals by the urgency associated with them. I did not perceive urgency involved with the referral for [Inmate GJ6456] on either date." Id. at 6. Kunsak attributed her decision not to assess the inmate to "the workload and extraordinary circumstances at that time." Id.

Based upon Kunsak's violation of DOC policy, the investigating officer recommended the convening of a "Pre Disciplinary Conference" ("PDC") to determine if action should be taken. Two additional policy violations were also scheduled to be addressed; the first, related to Kunsak's use of time and facility computers to work on a draft of a children's book, and the second, related to her failure to close and secure an office door in the vicinity of inmates when it was no longer occupied, presenting a security risk to staff and inmates. Id. at 13-22, 24.

The PDC committee consisted of SCI – Pittsburgh Superintendent Capozza, the facility human resources officer, the Major of the Guard, and Defendant Woods. Id. at 24. During the PDC, Kunsak admitted she should not have performed personal tasks during work hours, and acknowledged increased awareness of the need to close doors in the department. She also attributed her failure to prioritize the inmate to his history of prior psychiatric care and refusal of

4

medication. Id. at 22. The PDC determined that all charges were substantiated and recommended a ten-day suspension. Id. at 26. This recommendation was overruled by the DOC Director of Human Resources, who ordered Kunsak terminated. Id. at 28. Accordingly, on October 18, 2013, Superintendent Capozza informed Kunsak of her termination, effective that day. Id. at 30-31.

On November 3, 2013, Kunsak submitted an Appeal Request Form to the Pennsylvania Civil Service Commission (the "Commission"), seeking reinstatement and back pay. Kunsak alleged that her termination was the result of improperly timed discipline applied in a discriminatory manner. Kunsak further stated that in reaching the decision, the DOC failed to account for workload concerns, and her requests for assistance were overlooked despite being "requested by an employee who is disabled." ECF No. 69-6 at 4. Kunsak specified that the alleged discrimination was both gender and disability based. Id. at 5. In response to the provided prompts, Kunsak stated as follows:

> A. What action(s) occurred which led you to believe you were discriminated against?
> Management did not equally distribute workloads, after numerous requests. When an inmate suicide occurred, despite DOC past practices by other institutions with male psychology staff, I, as female staff, was fired.
>
> B. Where and when did this action occur? April 30-October 18, 2013.
>
> C. Who discriminated against you? Provide name(s) and job title(s).
> Superintendent Mark Capozza; Deputy William Woods.
>
> D. Do you believe the Civil Service Act and/or Rules were violated? If so, what section(s)?
> Yes, Section 867, 965.1, section 930 (beyond time limits)
>
> E. Provide any other information which you believe is relevant.
> Dr. Robert Dietz, SCI Green, provides onsite supervision one day a week, Dr. Kenneth Caions provides supervision as he was on site, as a Regional Manager. In the month of June, I covered for every psychology staff in their multiple absences, but coverage [] for me was limited.

Id.

On April 6, 2015, the Commission issued its adjudication of Kunsak's appeal, concluding that the evidence was sufficient to establish that Kunsak was terminated for just cause. ECF No. 64-5 at 4, 22. In addition, the Commission denied her request for a hearing of her discrimination claims, concluding that she failed to sufficiently plead an employment discrimination case. Id. at 5 n.1; 18 n.5. Kunsak filed a timely appeal to the Commonwealth Court of Pennsylvania, contending that the Commission erred as a matter of law when it failed to consider her discrimination claims. The Commonwealth Court affirmed both the Commission's finding of just cause for termination and its rejection of Kunsak's claims of disability and gender discrimination because she failed to "proffer any facts regarding how she may have been discriminated against based upon a disability." ECF No. 64-5 at 50; and see Kunsak v. State Civil Service Commission, No. 746 C.D. 2015, 2016 WL 2587421 *2 (Pa. Commw. Ct. May 5, 2016). The Commonwealth Court reiterated its holding in Reck v. State Civil Serv. Comm'n, 992 A.2d 977, 979 (Pa. Commw. 2010), that pursuant to the Pennsylvania Civil Service Act,

> [a]ffirmative factual allegations must support all claims of discrimination because discrimination cannot be inferred. The burden of proof is upon the party claiming to be aggrieved by the alleged discrimination. The Commission is authorized to dismiss an appeal, sua sponte, without a hearing if the appeal request form fails to state a claim.

Reck v. State Civil Serv. Comm'n, 992 A.2d 977, 979 (Pa. Cmwlth. 2010) (citations omitted; emphasis added). Section 105.12 of the Commission's Regulations sets forth what information is required to state a discrimination claim:

(b) The person appealing shall state clearly and concisely the:

  (1) Grounds of the interest of the person in the subject matter.
  (2) Facts relied upon.
  (3) Relief sought.

(c) Appeals alleging discrimination which do not include specific facts relating to discrimination may be dismissed. Specific facts which should appear on the appeal form include:

6

(1) The acts complained of.
(2) How the treatment differs from treatment of others similarly situated.
(3) When the acts occurred.
(4) When and how the appellant first became aware of the alleged discrimination.

4 Pa. Code § 105.12 (emphasis added). On the Commission's Appeal Request Form (Request Form), under "REASONS," is the instruction to "ANSWER THE FOLLOWING QUESTIONS AS COMPLETELY AS POSSIBLE. FAILURE TO DO SO MAY RESULT IN DENIAL OF YOUR APPEAL. (Attach additional sheets if necessary.)" Reproduced Record (R.R.) at 323a.

Kunsak, 2016 WL 2587421, at *1–2. The Commonwealth Court reviewed Kunsak's Civil Service Complaint, and determined that, "despite the Commission expressly instructing in its Regulations and Request Form to do so, and advising of the risk of having her discrimination appeal request denied, Kunsak did not proffer any facts regarding how she may have been discriminated against based upon a disability. Moreover, Kunsak's only statement that could even remotely support a sex discrimination claim was: 'When an inmate suicide occurred, despite [Department] past practices in other institutions with male psychology staff; I, as female staff, was fired.' … In the absence of '[a]ffirmative factual allegations' to support Kunsak's claims, and since 'discrimination cannot be inferred,' the Commission properly denied Kunsak's request for a hearing under Section 951(b) of the Act." Id. at *7. The Commonwealth Court also observed that "the employee must present sufficient evidence that, if believed and otherwise unexplained, indicates more likely than not that discrimination occurred. Moore v. State Civil Serv. Comm'n (Dep't of Corr.), 922 A.2d 80 (Pa. Cmwlth. 2007). Given the critical role of circumstantial evidence in discrimination cases, the *prima facie* burden of proof is not an onerous one." Id. at n.8. The Commonwealth Court further found that Kunsak's termination was with just cause:

> One of Kunsak's responsibilities was to timely act on inmate referrals for mental health evaluations. Kunsak knowingly violated the policy. If it were true that her workload in an understaffed environment made it impossible for her to comply with the policy, at the very least, she should have notified Woods. Instead, Kunsak designated Williams' referrals a low priority, and she knowingly failed to fulfill her job responsibilities. Under the circumstances, we agree with the Commission that Kunsak's failure to comply with the Department's policy rendered her unfit as a Specialist and her dismissal was "justifiable and for the good of the service."

Kunsak, 2016 WL 2587421, at *7.

During the pendency of her Civil Service Complaint, Kunsak pursued a complaint with the Pennsylvania Human Relations Commission ("PHRC"), alleging that her discharge was the result of discrimination on the basis of gender, age and disability, as well as retaliation. ECF No. 64-1 at 34-41. Kunsak's PHRC Complaint indicated that she requested accommodations for her disability, including schedule adjustments in 2008 for physician and therapy visits, and the need for assistance with her workload in 2013. Id. at 39. Kunsak acknowledged receiving scheduling assistance for appointments, but complained that the only assistance offered with regard to her workload was overtime pay, which she could not take advantage of due to fatigue as a result of her disabilities. Id. On May 8, 2015, the PHRC provided Kunsak with notification of the closing of her administrative complaint, thereby exhausting Kunsak's administrative remedies, as required to commence the pending action. 43 P.S. § 962(c)(1).

Kunsak thereafter commenced the instant action, alleging the following claims:

1. Count I v. DOC and SCI Pittsburgh: Title VII, 42 U.S.C. § 2000e, *et seq.* Hostile Work Environment;

2. Count II v. DOC and SCI Pittsburgh: Title VOO, 42 U.S.C. § 2000e, *et seq.*, Harassment;

3. Count III v. DOC and SCI Pittsburgh: Title VII, 42 U.S.C. § 2000e, *et seq.*, Harassment;

4. Count IV v. Defendants John E. Wetzel, Mark Capozza and William Woods: PHRA, 43 P.S. § 951, *et seq.*, Harassment and Hostile Work Environment;

8

5. Count V v. Wetzel, Capozza and Woods: PHRA, 43 P.S. § 951, *et seq.*, Disparate Treatment;

6. Count VI v. Wetzel, Capozza and Woods: PHRA, 43 P.S. § 951, *et seq.*, Discrimination Based on Disability;

7. Count VII v. DOC and SCI Pittsburgh: ADA, 42 U.S.C. § 12101, *et seq.*, Discrimination Based on Disability;

8. Count VIII v. DOC and SCI Pittsburgh: Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, Failure to Make Reasonable Accommodations; and,

9. Count IX v. DOC and SCI Pittsburgh: FMLA Retaliation.

On resolution of Defendants' Motion to Dismiss the First Amended Complaint, ECF No. 25, this Court entered an Order dismissing Count I, Count III, Counts IV, V and VI as to Wetzel, Count VII, Count VIII, and Count IX. ECF No. 29. Thereafter, the parties jointly stipulated to the dismissal of Counts II, IV and V, and Count VI as to Capozza. The parties further agreed that the only remaining claim to be resolved is set forth in Count VI as to Woods, i.e., a PHRA claim for discrimination based on disability. ECF No. 58. The pending Motion for Summary Judgment is therefore ripe for review.

**II.     STANDARD OF REVIEW**

Summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine

issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. McGreevy, 413 F.3d at 363; Simpson v. Kay Jewelers, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (citing Fuentes v. Perskie, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). As to materiality, the relevant substantive law identifies which facts are material. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. Further, inferences based upon speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## III. DISCUSSION

By way of his Motion for Summary Judgment, Woods raises several procedural and substantive defenses, including the inability to maintain a derivative aiding and abetting claim absent liability of a principal defendant for a primary violation, the expiration of the applicable statute of limitations as to Kunsak's failure to accommodate claim, and the absence of a genuine dispute regarding Woods' alleged failure to accommodate Kunsak's disability. ECF Nos. 62, 74.

In addition, Woods raises the preclusive effect of *res judicata* and/or collateral estoppel arising out of the Pennsylvania Commonwealth Court's adjudication of Kunsak's disability discrimination claim in conjunction with her termination appeal to the Pennsylvania Civil Service Commission.

Upon review of the extensive briefs and exhibits filed in support and in opposition to the Motion for Summary Judgment, the Court is constrained to find that Kunsak's claim is barred by the doctrine of *res judicata.*

"*Res judicata*, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit. A party seeking to invoke res judicata must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" Duhaney v. Attorney Gen. of U.S., 621 F.3d 340, 347 (3d Cir. 2010) (internal citations omitted). Further, "[t]he doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." Id.

"To make a determination whether a subsequent suit is based on the same cause of action as a prior suit, the required analysis does not depend on the specific legal theory invoked, but rather 'the essential similarity of the underlying events giving rise to the various legal claims.'" Funayama v. Nichia Am. Corp., 2014 WL 1013484, at *4 (E.D. Pa. Mar. 14, 2014), *aff'd*, 582 F. App'x 100 (3d Cir. 2014) (quoting Davis v. U.S. Steel Supply, 688 F.2d 166, 171 (3d Cir.1982)). "'[T]he focal points of our analysis are whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same.'" Id. (quoting United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984).

As refined at this stage of the litigation, Kunsak states that "[t]he gravamen of this dispute is whether the [DOC] breached its duty to provide reasonable accommodations to Dr. Kunsak by failing to engage in good faith in the interactive process, and whether Defendant William Woods … aided and abetted that breach." ECF No. 67 at 1. Plaintiff asserts this claim pursuant to the PHRA, which makes it unlawful:

> (e)  For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

43 P.S. §955. A PHRA failure to accommodate claim is stated and established where there is evidence in the record sufficient to establish "that: (1) she was disabled and her employer knew it; (2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated. Bielich v. Johnson & Johnson, Inc., 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014), citing Armstrong v. Burdette Tomlin Mem. Hosp., 438 F.3d 240, 246 (3d Cir. 2006); Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 330–31 (3d Cir. 2003). "[A]n individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision." Brzozowski v. Pennsylvania Tpk. Comm'n, 165 F. Supp.3d 251, 263 (E.D. Pa. 2016), *and aff'd as modified*, 2018 WL 3057002 (3d Cir. June 20, 2018).

Woods contends that Kunsak is precluded from bringing her disability discrimination claim in federal court because this same claim was adjudicated by the Pennsylvania Civil Service

Commission and the Commonwealth Court on appeal from a disposition unfavorable to her. Kunsak responds that she was never provided the opportunity to litigate her disability claim before the Commission, and so Woods is not entitled to the benefit of issue or claim preclusion in her federal court action. The undisputed evidence of record, however, establishes that Kunsak's pending claim mirrors her civil service action, where it was fully and finally litigated to her detriment.

As indicated, Kunsak filed an appeal of her termination to the Pennsylvania Civil Service Commission, alleging that her termination was the result of discrimination. ECF No. 69-6 at 4-5. Section 905a of the Civil Service Act provides, "[n]o officer or employee of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin or other non-merit factors." 71 Pa. Stat. Ann. § 741.905a (West).

Under the Civil Service Act, "the employee claiming discrimination in personnel actions has the burden of presenting evidence to support such a charge. The employee must present sufficient evidence that, if believed and otherwise unexplained, indicates more likely than not that discrimination occurred. If the employer is unable to present a credible response to employee's allegations, a presumption of discrimination arises and the employee's prima facie case stands determinative of the factual issue of the case." Anderson v. State Civil Serv. Comm'n (Pennsylvania State Police), No. 159 C.D. 2015, 2016 WL 55120, at *5 (Pa. Commw. Ct. Jan. 5, 2016) (citing Cola v. State Civil Serv. Comm'n (Dep't of Conservation & Natural Res.), 861 A.2d 434, 436 (Pa. Commw. 2004); and Moore v. State Civil Serv. Comm'n (Dep't of Corr.), 922 A.2d 80, 85 (Pa. Commw. 2007)).

13

While Kunsak states that she did not litigate her disability discrimination claim within her civil service appeal, the evidence of record, including her appeal form, indicate that she challenged her termination on the basis of gender and disability discrimination, and specifically identified Woods as an individual who allegedly discriminated against her. ECF No. 69-6 at 5. Further, she alleged that the discrimination consisted of limited coverage for her caseload, and that her concerns about the workload and requests for assistance were "overlooked" despite her status as "an employee who is disabled." Id. at 4 – 5. Although afforded the opportunity (and clear instructions) to do so, Kunsak failed to allege any additional facts or present evidence to support her claim. Accordingly, the Commission dismissed her discrimination claim as unsubstantiated, and this holding was affirmed on appeal to the Commonwealth Court. Further, the Commission concluded that based upon her conduct in failing to screen Inmate G GJ6456, her termination was with "just cause."

Because there can be no genuine dispute that Kunsak was provided an opportunity to make out her failure to accommodate disability discrimination claim against Woods in her state administrative proceeding and then on appeal to the Commonwealth Court, she is precluded from reasserting her claims in a second suit in federal court. See, Bazargani v. Haverford State Hospital, 90 F. Supp.2d 643, 658-59 (E.D. Pa. 2000), aff'd 33 F. App'x 647 (3d Cir. 2002)(decision of state civil service commission that psychiatrist had been discharged due to failure to follow hospital policies, which was adopted and affirmed by state court, precluded plaintiff from raising claims of discrimination and retaliation in subsequent action against hospital under Title VII, where such claims could have been pursued before commission and in state court, and were based upon the same facts as state proceedings); Anderson v. PA State Police, No. 15-0382, 2018 WL 1886525 (M.D. Pa. March 29, 2018)(because plaintiff alleged racial discrimination in her termination

proceedings, and the Civil Service Commission and the Commonwealth Court had the competence and jurisdiction review those claims, the Commission's determination finding no discrimination, affirmed on appeal, barred subsequent federal discrimination claim challenging termination); Kiniropoulos v. Northampton County Child Welfare Service, No. 11-6593, 2014 WL 1681996 (E.D. Pa. April 29, 2014)(*res judicata* precludes relitigation of FMLA retaliation claim where issue was raised before Civil Service Commission and while not raised on appeal to the Commonwealth Court, plaintiff was not barred from doing so, and so is bound by prior determination).

**IV.　CONCLUSION**

For the foregoing reasons, Defendant William J. Wood's Motion for Summary Judgment, ECF No. 61, is properly granted. Accordingly, the following Order is entered:

**ORDER**

AND NOW, this 12th day of September, 2018, upon consideration of the Motion for Summary Judgment filed on behalf of Defendant William J. Woods, ECF No. 61, and the briefs and exhibits filed in support and in opposition thereto, it is hereby ORDERED that summary judgment is GRANTED in favor of the defendant and against the plaintiff.

The Clerk of Court is directed to close the above-captioned action.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within

thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing